## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

|  |  |  |
|---|---|---|
| TIARA CLARK<br>3436 N. Mascher St.<br>Philadelphia, PA 19140 | : | |
| | : | CIVIL ACTION |
| Plaintiff, | : | No.: 22-3566 |
| | : | |
| v. | : | |
| | : | |
| BIG WAY, INC.<br>d/b/a Valley Green Inn<br>7 Valleygreen Rd.<br>Philadelphia, Pa 19128<br>    and<br>JACK OTT<br>c/o Big Way, Inc.<br>7 Valleygreen Rd.<br>Philadelphia, Pa 19128 | : | **JURY TRIAL DEMANDED** |
| Defendants. | : | |

## FIRST AMENDED
## CIVIL ACTION COMPLAINT[1]

Anika Bernard (*hereinafter* referred to as "Plaintiff," unless indicated otherwise) by and

through her undersigned counsel, hereby avers as follows:

## INTRODUCTION

1.    Plaintiff has initiated this action to redress violations by Big Way, Inc. d/b/a Valley

Green Inn and Jack Ott (*hereinafter* collectively referred to as "Defendants") of Title VII of the

Civil Rights Act of 1964 ("Title VII" – 42 U.S.C. §§ 200d *et seq*.), Section 1981 of the Civil Rights

Act of 1866 ("Section 1981" – 42 U.S.C. § 1981), and the Pennsylvania Human Relations Act

---

[1] Plaintiff's makes this amendment pursuant to Fed.R.Civ.P. 15(a)(1)(B).

("PHRA").[2] As a direct consequence of Defendants' unlawful actions, Plaintiff seeks damages as set forth herein.

## JURISDICTION AND VENUE

2.      This Court has original subject matter jurisdiction over the instant action pursuant to 28 U.S.C. §§ 1331 and 1343(a)(4) because it arises under the laws of the United States and seeks redress for violations of federal laws.

3.      This Court may properly assert personal jurisdiction over Defendants because their contacts with this state and this judicial district are sufficient for the exercise of jurisdiction over Defendants to comply with traditional notions of fair play and substantial justice, satisfying the standard set forth by the United States Supreme Court in *Int'l Shoe Co. v. Washington*, 326 U.S. 310 (1945), and its progeny.

4.      Pursuant to 28 U.S.C. § 1392(b)(1) and (b)(2), venue is properly laid in this district because Defendants are deemed to reside where they are subjected to personal jurisdiction, rendering Defendants residents of the Eastern District of Pennsylvania.

## PARTIES

5.      The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

6.      Plaintiff is an adult individual, with an address as set forth in the caption.

7.      Defendant Big Way, Inc. (hereinafter "Defendant Entity") is a corporation that operates a restaurant and a banquet and wedding venue space in Fairmount Park in Philadelphia, Pennsylvania.

---

[2] Plaintiff has properly exhausted her administrative proceedings regarding her PHRA claims by dual-filing her Charge of Discrimination with the PHRC and receiving a file closure letter date September 19, 2022.

8.      Defendant Jack Ott (hereinafter "Jack Ott") is upon information and belief, the owner and a high-level decision maker concerning terms and conditions of employment for employees (including Plaintiff) of Defendant Entity including but not limited to hiring, firing, and issuing discipline.

9.      At all times relevant herein, Defendants acted by and through their agents, servants and employees, each of whom acted at all times relevant herein in the course and scope of their employment with and for the Defendants.

## FACTUAL BACKGROUND

10.     The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

11.     Plaintiff is a black (African-American) female.

12.     Plaintiff was hired by Defendants in or about July of 2018.

13.     Plaintiff worked for Defendants as a server until in or about February of 2022, when she was unlawfully terminated from her employment (discussed further *infra*).

14.     During Plaintiff's employment with Defendants, Defendants' serving staff was primarily Caucasian and in November of 2021, Defendant hired a new front of the house manager, Maximillian Froelich (hereinafter "Froelich"), who was also Caucasian.

15.     Towards the end of Plaintiff's employment, she observed and was subjected to racial discrimination.

16.     For example, the majority of customers that were sat in Plaintiff's section were African-American/black.

17.     Plaintiff observed that the hostess would literally track her down and force her to handle primarily black customers or would primarily assign black customers to her section.

18.     Plaintiff asked the hostess on numerous occasions to seat customers in her section of all races and not just her own race, as it made Plaintiff feel uncomfortable and resulted in her not being assigned as many customers as her Caucasian counterparts.

19.     The hostess did not listen and continued to primarily seat Plaintiff's section with black customers (which sometimes resulted in her losing out on customers).

20.     Plaintiff expressed concern of racial discrimination to Froelich and in response, he conveyed Plaintiff's concerns to Defendant Ott.

21.     After Froelich escalated Plaintiff's concerns, Defendant Ott contacted Plaintiff and asked him how much money she thought she lost because of the racist behavior that was occurring. Ott then tried to pay Plaintiff in cash for such loss, rather than investigate and correct the racist behavior occurring within his restaurant.

22.     Again, Defendant Ott's aforesaid actions made Plaintiff feel uncomfortable, but she continued to work for Defendant.

23.     Unfortunately, the aforesaid racist behavior did not cease and as a result, Plaintiff asked Froelich if it was possible for her to change to a "pick-up" server.

24.     A pick-up server is a server who is not scheduled for any particular shift but rather will pick up shifts when needed.

25.     There were several other employees who were pick-up servers within Defendant Entity prior to Plaintiff's termination.

26.     Within Defendant, it was customary for pick-up servers' names to remain on the schedule for the purpose of potentially being scheduled if another server was unable to make their shift.

27.     Froelich agreed to make Plaintiff a pick-up server and just days before Plaintiff's termination asked her if it was okay to put her on "pick-up only," to which Plaintiff responded "yes."

28.     Shortly after her aforesaid conversation with Froelich, Plaintiff was asked by several servers to pick up their shifts and while she agreed, Defendants denied her the ability to do so.

29.     Plaintiff was told that the decision to deny Plaintiff pick-up shifts came from Defendant Ott.

30.     When Plaintiff questioned Defendant Ott about this, he accused Plaintiff of giving her two weeks' resignation notice and therefore was no longer employed with Defendant Entity.

31.     Plaintiff never gave two weeks' notice or resigned from her employment with Defendants.

32.     Plaintiff only ever questioned whether she could be a "pick-up only" server.

33.     It was agreed to by Defendant Entity's management that she would be a "pick-up only" server and had there been no such agreement, Plaintiff would have continued to work as a full-time server (as she did not want to lose her job).

34.     Plaintiff believes and therefore avers that she was subjected to a hostile work environment and terminated because of her race and/or in retaliation for her complaints of race discrimination.

### COUNT I
### Violations of 42 U.S.C. Section 1981
### ([1] Race Discrimination; [2] Hostile Work Environment; and [3] Retaliation)
### -Against Both Defendants-

35.     The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

36.     During Plaintiff's employment with Defendants, she was subjected to discrimination and a hostile work environment through disparate treatment and demeaning and/derogatory treatment because of her race.

37.     Instead of meaningfully investigating Plaintiff's aforesaid complaints of race discrimination, Defendants' non-black management ignored them, tried to pay her off, left her legitimate concerns unresolved, and she continued to be subjected to discrimination (as discussed *supra*).

38.     In or about February of 2022, Plaintiff was terminated from her employment with Defendants, after Defendant's management refused her work and tried to allege that Plaintiff had resigned from her employment with Defendant Entity – which is completely false and pretextual.

39.     Plaintiff believes and therefore avers that her race was a motivating or determinative factor in Defendants' decision to terminate her employment.

40.     Plaintiff also believes and therefore avers that she was terminated in retaliation for complaining of racial discrimination in advance of her termination.

41.     Defendant Ott is personally liable for the violations alleged herein because he aided, abetted and personally participated in the discriminatory/retaliatory actions described herein.

42.     These actions as aforesaid constitute unlawful discrimination, retaliation, and a hostile work environment under Section 1981.

**COUNT II**
**Violations of Title VII of the Civil Rights Act of 1964 ("Title VII")**
**([1] Race Discrimination; [2] Hostile Work Environment; and [3] Retaliation)**
**-Against Defendant Entity Only-**

43.     The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

44.     During Plaintiff's employment with Defendants, she was subjected to discrimination and a hostile work environment through disparate treatment and demeaning and/derogatory treatment because of her race.

45.     Instead of meaningfully investigating Plaintiff's aforesaid complaints of race discrimination, Defendants' non-black management ignored them, tried to pay her off, left her legitimate concerns unresolved, and she continued to be subjected to discrimination (as discussed *supra*).

46.     In or about February of 2022, Plaintiff was terminated from her employment with Defendants, after Defendant's management refused her work and tried to allege that Plaintiff had resigned from her employment with Defendant Entity – which is completely false and pretextual.

47.     Plaintiff believes and therefore avers that her race was a motivating or determinative factor in Defendants' decision to terminate her employment.

48.     Plaintiff also believes and therefore avers that she was terminated in retaliation for complaining of racial discrimination in advance of her termination.

49.     These actions as aforesaid constitute unlawful discrimination, retaliation, and a hostile work environment under Title VII.

## COUNT III
### Violations of Title VII of the Pennsylvania Human Relations Act ("PHRA")
### ([1] Race Discrimination; [2] Hostile Work Environment; and [3] Retaliation)
### -Against Both Defendants-

50.     The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

51.     During Plaintiff's employment with Defendants, she was subjected to discrimination and a hostile work environment through disparate treatment and demeaning and/derogatory treatment because of her race.

52.     Instead of meaningfully investigating Plaintiff's aforesaid complaints of race discrimination, Defendants' non-black management ignored them, tried to pay her off, left her legitimate concerns unresolved, and she continued to be subjected to discrimination (as discussed *supra*).

53.     In or about February of 2022, Plaintiff was terminated from her employment with Defendants, after Defendant's management refused her work and tried to allege that Plaintiff had resigned from her employment with Defendant Entity – which is completely false and pretextual.

54.     Plaintiff believes and therefore avers that her race was a motivating or determinative factor in Defendants' decision to terminate her employment.

55.     Plaintiff also believes and therefore avers that she was terminated in retaliation for complaining of racial discrimination in advance of her termination.

56.     Section 955(e) of the PHRA states that it is an unlawful discriminatory practice "[f]or any person, employer, employment agency, labor organization or employee, to aid, abet, incite, compel or coerce the doing of any act declared by this section to be an unlawful discriminatory practice." 43 Pa. Cons. Stat. § 955(e).

57.     Defendant Ott is personally liable for the violations alleged herein because he aided, abetted and personally participated in the discriminatory/retaliatory actions described herein.

58.     These actions as aforesaid constitute unlawful discrimination, retaliation, and a hostile work environment under the PHRA.

**WHEREFORE**, Plaintiff prays that this Court enter an Order providing that:

A.       Defendants are to promulgate and adhere to a policy prohibiting discrimination and retaliation in the future against any employee(s);

B.       Defendants are to compensate Plaintiff, reimburse Plaintiff, and make Plaintiff whole for any and all pay and benefits Plaintiff would have received had it not been for Defendants' illegal actions, including but not limited to back pay, front pay, salary, pay increases, bonuses, insurance, benefits, training, promotions, reinstatement and seniority;

C.       Plaintiff is to be awarded punitive damages as permitted by applicable law, in an amount believed by the Court or trier of fact to be appropriate to punish Defendants for their willful, deliberate, malicious and outrageous conduct and to deter Defendants or other employers from engaging in such misconduct in the future;

D.       Plaintiff is to be accorded other equitable and legal relief as the Court deems just, proper and appropriate (including but not limited to damages for emotional distress, pain, suffering and humiliation); and

E.       Plaintiff is to be awarded the costs and expenses of this action and reasonable attorney's fees as provided by applicable federal and state law.

F.       Plaintiff is to be awarded any and all statutory enhancements available as a matter of law.

G.       Plaintiff demands trial by jury on all issues so triable consistent with Fed. R. Civ. P. 38(a)(1).

Respectfully submitted,

**KARPF, KARPF & CERUTTI, P.C.**

By:    /s/ W. Charles Sipio
       W. Charles Sipio, Esq.
       Samantha Pankey Martin, Esq.
       3331 Street Rd.
       Two Greenwood Square, Suite 128
       Bensalem, PA 19020
       (215) 639-0801

Dated:  November 18, 2022

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing was served upon all counsel

of record via this Court's CM/ECF system.

*/s/ W. Charles Sipio*
W. Charles Sipio, Esq.

Dated: November 18, 2022